UNITED STATES of America, Plaintiff–Appellee,

v.

**Jin Han KIM, Defendant–Appellant.**

No. 98–50203.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 2, 1999.

Decided Dec. 2, 1999.

Jerry L. Newton, Newton & Newton, Hermosa Beach, California, for the defendant-appellant.

George S. Cardona, Jerome H. Friedberg, Assistant United States Attorneys, Los Angeles, California, for the plaintiff-appellee.

Before: Boochever and T.G. Nelson, Circuit Judges, and Ware,[1] District Judge.

1. Honorable James Ware, United States District Court Judge for the Northern District of

**WARE, District Judge:**

Defendant-appellant Jin Han Kim ("Kim") appeals his conviction and sentence imposed for aiding and abetting the possession of stolen goods. Kim raises two issues on appeal: first, whether the district court erred by failing to give a special unanimity instruction to the jury; and second, whether the district court erred in ordering Kim's sentence for the count of conviction to run consecutively to his prior undischarged sentences. We have jurisdiction to review Kim's conviction and sentence pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291, and we affirm.

### I.

On February 16, 1996, a Los Angeles County Deputy Sheriff executed a search warrant on a warehouse located in Anaheim, California. Inside the warehouse were several thousand boxes of stolen televisions, appliances, furniture, clothes, shoes, office equipment and toys. The Sheriff stayed overnight at the warehouse in order to inventory and guard the stolen property. The next morning, five individuals including co-defendant Jong Han Park arrived at the warehouse. Park was detained, questioned, and arrested.

A two count indictment was returned against Park and Kim. In Count One, Park and Kim were charged with violating 18 U.S.C. § 659, knowingly possessing stolen goods on February 17, 1996 at the Anaheim warehouse. Kim's criminal liability was premised on an aider and abettor theory. In Count Two, Park was charged with possessing additional stolen goods.

Park pled guilty to Count One of the indictment. Kim was tried before a jury and convicted of aiding and abetting Park in the possession of stolen goods.

At trial, Park testified that Kim hired him to manage the warehouse in Anaheim. Park leased the warehouse under an alias and paid for the rent with money provided by Kim. Park testified that he took his instructions from Kim while managing the warehouse. Park's duties included taking inventory and delivering the stolen merchandise. Park also testified that Kim supplied him with cash to pay workers at the warehouse.

The district court gave the Ninth Circuit model jury instruction on aiding and abetting, with minor modifications, which are not at issue in this appeal. The district court also gave a standard unanimity instruction.[2]

The jury was given a copy of the indictment and jury instructions when it began deliberations. During deliberations, the jury sent the court a note observing that the indictment charged Kim with aiding *and* abetting in the conjunctive, whereas the jury instruction referred to aiding *or* abetting in the disjunctive.[3] The jury asked the district court to indicate which language controlled,[4] and to clarify the meanings of the terms "procured," "aided," "abetted," "counseled," "induced," and "commanded."

The district court consulted with the parties and issued Special Instruction Number 1, directing the jury to "follow the wording of the jury instruction," which

California, sitting by designation.

2. "Your verdict, whether guilty or not guilty, must be unanimous."

3. The indictment charged Kim with having "aided, abetted, counseled, commanded, induced *and* procured" the charged offense (emphasis added). The jury instructions read as follows: "To prove a defendant guilty of aiding and abetting, the government must prove beyond a reasonable doubt: ... the

defendant knowingly and intentionally aided, abetted/helped, counseled, commanded, induced *or* procured, that is, to get or bring about by some effort, Jong Han Park to commit this offense" (emphasis added).

4. Specifically, the jury note stated, "[t]he Instruction No. 18, states that the defendant 'abetted/helped, counseled, commanded, induced *or* procured ...' Is it any of these ('or') or all of ('and')."

referred to the acts constituting the offense in the disjunctive. The district court also provided definitions for the requested terms as follows:

1. "Procured" means to get or bring about by some effort.
2. "Aid" means to support, help, assist or strengthen.
3. "Abet" means to encourage, incite or cause another to commit a crime.
4. "Counseled" means to advise and assist another person.
5. "Induce" means to bring on or about, to affect, cause, to influence one to an act or course of conduct.
6. "Command" means to order.

*Id.* The jury sent out no other notes requesting clarification and subsequently returned a guilty verdict.

In sentencing Kim, the district court imposed a special assessment of $100.00, a three-year period of supervised release, and a 104–month sentence to run consecutive to two prior federal sentences.

## II.

■ As a threshold matter, the parties dispute the standard of review governing the district court's refusal to give a special unanimity instruction. The record indicates that the district court deemed Kim to have made a timely request for a special unanimity instruction, thus preserving the issue for appeal. Accordingly, this court reviews the district court's refusal to give a special unanimity instruction for abuse of discretion. *See United States v. Amlani,* 111 F.3d 705, 716 (9th Cir.1997).

■ In the ordinary case, a general unanimity instruction suffices to instruct the jury that they must be unanimous on whatever specifications form the basis of the guilty verdict. *See United States v. Payseno,* 782 F.2d 832, 835 (9th Cir.1986). A specific unanimity instruction is required only when it appears that " 'there is a genuine possibility of jury confusion or that a conviction may occur as the result of

different jurors concluding that the defendant committed different acts.' " *United States v. Anguiano,* 873 F.2d 1314, 1319 (9th Cir.1989) (quoting *United States v. Echeverry,* 719 F.2d 974, 974 (9th Cir.), *modifying, United States v. Echeverry,* 698 F.2d 375 (9th Cir.1983)). Kim contends that a specific unanimity instruction was required for both reasons. We consider first Kim's contention regarding jury confusion.

■ Kim analogizes the present case to *United States v. Echeverry, supra,* in which this court held that a special unanimity instruction is required where the jury indicates, by written questions to the court, that there is confusion concerning a conspiracy charge. The present case is clearly distinguishable from *Echeverry.* In *Echeverry,* the defendant was charged with conspiring to distribute cocaine throughout a seven-month period, from December 1980 to June 1981, and actual distribution of cocaine on three separate occasions. *United States v. Echeverry,* 698 F.2d at 376. At trial, proof was offered of cocaine sales in December 1980 and June 1981. *Id.* During jury deliberations, the jury asked, "[m]ay we consider a conspiracy that does not cover that entire time span," and "[m]ay we consider the existence of more than one conspiracy?" *Id.* Under those circumstances, this court had "no means by which [to] be certain that some portion of the jury, in casting a guilty ballot, did not envision a December conspiracy and failed to find enough evidence to believe that there was a June conspiracy, while other jurors envisioned a June conspiracy and not a December conspiracy." *Id.* at 377. Therefore, the jury's note necessitated a special unanimity instruction. *See id.* at 377–78.

■ Unlike *Echeverry,* Kim in the present case was charged with only a single crime, based upon a single set of facts: aiding and abetting the possession of stolen goods on February 17, 1996 at the Anaheim warehouse. Furthermore, unlike *Echeverry,* the note from the jury in the

present case did not indicate confusion over the acts the government contended constituted the alleged offense. Instead, the jury's note suggested confusion over the legal standards to be applied, arising primarily from the discrepancy between the indictment and the jury instruction. Kim's contention that the jury note in this case indicated anything more than confusion over the legal standards to be applied is pure speculation, which is insufficient to mandate a specific unanimity instruction. *See United States v. Anguiano,* 873 F.2d at 1319.

■ Second, Kim contends that a specific unanimity instruction was required because the jury's note raised a genuine possibility that his conviction occurred "as the result of different jurors concluding that the defendant committed different acts." Kim argues that some jurors may have believed he "commanded" or "ordered" Park to take possession of stolen goods, while others may have believed he "assisted" Park by providing him money to pay the rent on the warehouse, and still others may have believed Park committed other acts constituting the charged offense.

Kim's argument is without merit. In *Schad v. Arizona,* 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), the Supreme Court held that jurors are not constitutionally required to unanimously agree on alternative theories of criminal liability. *See also United States v. McCormick,* 72 F.3d 1404, 1409 (9th Cir.1995); *Sullivan v. Borg,* 1 F.3d 926, 927–928 (9th Cir.1993). Title 18 U.S.C. § 2 prohibits aiding, abetting, counseling, commanding, inducing or procuring the commission of a crime. These six prohibited acts are merely alternative means by which a defendant may be held criminally liable for the underlying substantive offense. In the present case, Kim surmises that some jurors may have concluded that he "commanded," that others may have concluded that he "ordered," and that still others may have concluded that he "assisted" in the crime of possession of stolen goods. Under *Schad,* how-

ever, it was not necessary for the jurors in this case to unanimously agree on a specific classification of Kim's conduct. Nor was it necessary for them to specify which conduct led them to conclude that Kim was an accessory. All that was necessary was a unanimous decision that Kim knowingly and intentionally helped Park in the possession of stolen goods. *See Ninth Circuit Model Jury Instruction* 5.1. Therefore, the district court did not abuse its discretion in declining to give a specific unanimity instruction to the jury.

### III.

At the time of sentencing, Kim was serving a 58–month sentence for conspiracy to steal property in interstate commerce, in violation of 18 U.S.C. § 371, imposed in the Northern District of Texas (case no. 3:94–CR–255–P). He had also received a sentence of 18 months for escaping from custody, in violation of 18 U.S.C. § 751, imposed in the Central District of California (case no. CR 96–741–CBM), which was to be served consecutively to the 58–month term.

The district court in the instant case ordered Kim's 104–month sentence to run consecutively to the prior undischarged terms of imprisonment. The district court pronounced an alternative sentence to be imposed if an appellate court determined that Kim's imprisonment in the instant case should run concurrently with his 18–month term of imprisonment for escape: 115 months of imprisonment to run concurrent with the 18–month sentence but consecutive to the 58–month term of imprisonment Kim is currently serving in the conspiracy case from the Northern District of Texas. Kim contends that the district court erred when it ordered the 104–month sentence to run consecutively to the prior undischarged terms of imprisonment.

■ The interpretation and application of the Sentencing Guidelines are reviewed *de novo. See United States v. Shrestha,* 86 F.3d 935, 938 (9th Cir.1996).

Factual findings by the trial court are reviewed for clear error. *See United States v. Thompson,* 80 F.3d 368, 370 (9th Cir.1996).

Kim acknowledges that under USSG § 5G1.3(a), the district court was required to impose a sentence for the instant offense running consecutively to Kim's original 58–month sentence for conspiracy. Under USSG § 5G1.3(a), "[i]f the instant offense was committed while the defendant was serving a term of imprisonment (including ... escape status) ... the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment."

■■■■ Furthermore, Kim acknowledges that under USSG § 5G1.3(c), the district court had the discretion to order Kim's sentence for the instant offense be served consecutively to his sentence for escape. Nevertheless, Kim argues that the district court abused its discretion in imposing a consecutive sentence because it was required, but failed, to make a determination as to whether its sentence was reasonable in light of the factors set forth in § 5G1.3, Application Note 3. The enumerated factors are as follows:

(a) the type (e.g., determinate, indeterminate/parolable) and length of the prior undischarged sentence;

(b) the time served on the undischarged sentence and the time likely to be served before release;

(c) the fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; and

(d) any other circumstance relevant to the determination of an appropriate sentence for the instant offense.

USSG § 5G1.3, Application Note 3. Sentencing courts are required to give careful consideration to each of the factors specifically enumerated in the guidelines and determine, based on those factors, whether a concurrent, partially concurrent, or consecutive sentence will achieve a "reasonable punishment" and "avoid unwarranted disparity." *United States v. Luna–Madellaga,* 133 F.3d 1293, 1296 (9th Cir.), *cert. denied,* — U.S. ——, 118 S.Ct. 2073, 141 L.Ed.2d 148 (1998).

Contrary to Kim's argument, the record indicates that the district court considered the relevant factors. The district court noted that Kim had previously been sentenced to 18 months on the escape charge. The district court also noted that Kim was still serving the sentence for his 1994 cargo theft conviction and had not yet begun serving his sentence on the escape charge. The district court indicated that the escape and cargo theft were "totally discrete" crimes and were both serious offenses, which weighed against imposing concurrent sentences and effectively giving Kim a "free ride" on the escape charge. The district court also considered the total 180–month sentence that would result for all three offenses. Accordingly, the district court did not err in ordering Kim's sentence to run consecutively to his prior undischarged sentences.

AFFIRMED.